**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

MATTEL, INC.,

          Plaintiff,

v.

THE PARTNERSHIPS and
UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A",

          Defendants.

Case No. 26-cv-02754

**COMPLAINT**

Plaintiff Mattel, Inc. ("Mattel" or "Plaintiff") hereby brings the present action against the Partnerships and Unincorporated Associations identified on Schedule A attached hereto (collectively, "Defendants") and alleges as follows:

**I. JURISDICTION AND VENUE**

1. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, the Copyright Act 17 U.S.C. § 501, *et seq.*, 28 U.S.C. § 1338(a)-(b) and 28 U.S.C. § 1331.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through at least the fully interactive e-commerce stores[1] operating under the seller aliases identified in Schedule A attached hereto (the "Seller Aliases"). Specifically, Defendants have targeted sales to

---

[1] The e-commerce store URLs are listed on Schedule A hereto under the Online Marketplaces.

Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars from U.S. consumers and, on information and belief, have sold products using infringing and counterfeit versions of Mattel's federally registered trademarks and/or unauthorized copies of the federally registered Barbie copyrighted work (collectively, the "Unauthorized Products") to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Mattel substantial injury in the State of Illinois.

## II. INTRODUCTION

3.     This action has been filed by Mattel to combat e-commerce store operators who trade upon Mattel's reputation and goodwill by offering for sale and/or selling Unauthorized Products. Defendants create e-commerce stores operating under one or more Seller Aliases that are advertising, offering for sale, and selling Unauthorized Products to unknowing consumers. Defendants' activities, occurring at the same time and in the same retail space and manner as one another, blend together to create a single negative impression on consumers such that they constitute the same occurrence or series of occurrences.  Defendants attempt to avoid and mitigate liability by operating under one or more Seller Aliases to conceal both their identities and the full scope and interworking of their counterfeiting operation. Mattel is forced to file this action to combat Defendants' counterfeiting of its registered trademarks and infringement of the registered Barbie copyrighted work, as well as to protect unknowing consumers from purchasing Unauthorized Products over the Internet. Mattel has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable trademarks and infringement

2

of the registered Barbie copyrighted work as a result of Defendants' actions and seeks injunctive and monetary relief.

### III. THE PARTIES

**Plaintiff**

4.      Mattel, Inc. is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 333 Continental Boulevard, El Segundo, CA 90245.

5.      Mattel, through its family of companies, is a leading designer, developer, marketer, manufacturer and distributor of well-known children's toys and games under its iconic brands, including, but not limited to: Barbie, UNO, Thomas & Friends, Hot Wheels, American Girl, and Fisher-Price.

6.      Mattel sells its products worldwide through major retailers, quality toy stores and online marketplaces, including, but not limited to: Wal-Mart, Target Stores, Walgreens, Amazon, and many others.

7.      One of Mattel's most popular and successful brands is Barbie, a famous and world-renowned fashion doll line.

8.      The first Barbie doll was created in the late 1950's by Ruth Handler after recognizing that her daughter Barbara had more limited toy choices than her son, Ken. For example, her son had toys with which he could imagine himself as a firefighter, an astronaut, a cowboy, and a doctor, among other things. Girls, on the other hand, were mostly playing with bits of cardboard in the form of paper dolls used to express fashion play, or baby dolls with which they could imagine themselves as a mother or caregiver. There was no such thing as a three-dimensional

fashion doll. Ruth realized that there was a market for such a doll with which girls could play with fashion and dream of growing up.

9.    The Barbie doll was first introduced at the American International Toy Fair in New York on March 9, 1959, a date which has since become recognized by Mattel as Barbie's birthday.

10.    However, at the Toy Fair that year, the Barbie doll was not an immediate hit. The toy buyers, who at the time were mostly men, generally did not know what to make of a fashion doll in the form of an adult woman for children. Still, Ruth understood that when the doll got into girls' hands, they would see the doll as a platform for imaginative play. Ultimately, when girls saw the first commercial for the Barbie doll, orders for the doll went through the roof, to the point where Mattel could not manufacture enough dolls to keep up with the demand.

11.    The Barbie doll soon became famous around the world, dramatically impacting the way that children interacted with dolls, and the Barbie brand has since expanded to a vast range of commercial products and entertainment, including, but not limited to, doll accessories, playhouses, toy cars and other toy vehicles, books, movies, games, puzzles, clothing, beverages, candy, food, and more (collectively, the "Barbie Products").

12.    During the first year of production, approximately 300,000 original Barbie dolls were sold. To date, more than one billion Barbie brand dolls have been sold across 150 different countries, as well as additional sales of non-toy Barbie Products in over 45 categories. Total annual sales under the Barbie brand are more than a billion dollars, with much of that revenue stemming from sales of Barbie Products other than toys.

13.    The impact of the Barbie brand has reached heights and received honors rarely seen in the toy world. For example, the Barbie character has appeared in films, including the *Toy Story* franchise and the recent blockbuster *Barbie* movie, has had a section of Times Square briefly

4

renamed "Barbie Boulevard", has been depicted in a painting by the artist Andy Warhol, has landed the cover of *Time Magazine* and in 2023 became the first and only fictional character to be named as one of *Forbes*' most powerful women in the world, and is part of the Smithsonian Institution's collection in the National Museum of American History. In 2023, Director Greta Gerwig's film *Barbie* was released as the first live action adaptation of the Barbie brand. The *Barbie* film was the highest grossing film worldwide for that year and has been nominated for more than 450 awards.

14. The Barbie brand has been a global success that resonates with children and adults worldwide, making Barbie one of the most recognizable brands around the world. Among the purchasing public, genuine Barbie Products are instantly recognizable as such.

15. The BARBIE trademark was first used in 1959, and products have continuously been sold under the BARBIE trademark and other trademarks (collectively, the "BARBIE Trademarks"). As a result of this long-standing use by Mattel, strong common law trademark rights and goodwill have amassed in the BARBIE Trademarks. The BARBIE Trademarks are registered with the United States Patent and Trademark Office, a non-exclusive list of which is included below.

| Registration No. | Trademark |
|---|---|
| 0689055; 0741208; 0768331; 0768397; 0772298; 0810106; 0813733; 0814091; 0814995; 0816601; 0817200; 1000125; 1041587; 1300766; 1693139; 1746477; 1754535; 1769285; 1773571; 1775637; 1795564; 1795876; 1946918; 2040801; 2151953; 2410087; 2469935; 2495195; 2678386; 3287023; 6267201; 6267202; 6302628; 6324165; 6325496; 7157088 | BARBIE |
| 4720463 | BARBIE AND THE NUTCRACKER |

| 6719769 | BARBIE BIG CITY, BIG DREAMS |
|---|---|
| 3083593 | BARBIE COLLECTOR |
| 5602185; 5602186 | BARBIE DREAMHOUSE ADVENTURES |
| 5233292 | BARBIE DREAMTOPIA |
| 5441651 | BARBIE LIVE! IN THE DREAMHOUSE |
| 5371526 | BARBIE SIGNATURE |
| 726935; 780598; 3317103; 6595905 | KEN |
| 3210590 | BABY DOCTOR |
| 5449612 | BABYSITTERS INC. |
| 4412006 | BALLET WISHES |
| 4227182 | BEACH CRUISER |
| 3319393 | BFMC |
| 3494631 | BLACK LABEL |
| 6038017 | BMR1959 |
| 4071738 | CAREER OF THE YEAR |
| 2931614 | CHELSEA |
| 6686535 | CHELSEA CAN BE... |
| 6629906 | CHRISTIE |
| 5370938 | CLUB CHELSEA |
| 6097805 | COLOR REVEAL |
| 1461136 | COURTNEY |
| 5782681 | DOGGY DAYCARE |
| 6267675 | DREAM CLOSET |
| 1671877 | DREAM HOUSE |

| | |
|---|---|
| 5546538 | DREAMCAMPER |
| 6382383 | FASHION FUN FOR EVERYONE |
| 3702525 | FASHIONISTAS |
| 6647901 | FAST CAST CLINIC |
| 6267600 | FLIGHT OF FASHION |
| 6207164 | FRESH 'N' FUN |
| 4891547 | GLAM GETAWAY |
| 3024502 | GOLD LABEL |
| 1046919 | HAPPY BIRTHDAY |
| 6085856 | HOLIDAY BARBIE |
| 5613219 | INSPIRING WOMEN |
| 2261294 | NIKKI |
| 6383700 | PINK COLLECTION |
| 3189837 | PINK LABEL |
| 3093909 | PLATINUM LABEL |
| 6284544 | PRANCE & SHIMMER |
| 6207163 | PRINCESS ADVENTURE |
| 6442742 | RAINBOW MAGIC |
| 2968401 | RAQUELLE |
| 3060989 | SILKSTONE |
| 774892 | SKIPPER |
| 877712 | STACEY |
| 1567336 | STACIE |
| 1476090 | STEVEN |

| | |
|---|---|
| 3084790 | TAFFY |
| 1477905 | TERESA |
| 6229735 | TINY WISHES |
| 5689325 | TOTALLY HAIR |
| 6755261 | TRIBUTE COLLECTION |
| 4281537 | ULTIMATE CLOSET |
| 5836167 | ULTIMATE CURLS |
| 5214711 | YOU CAN BE ANYTHING |
| 3236501 | ZOO DOCTOR |
| 7408956 | |
| 2087842 | |
| 2150392 | |
| 2639971 | |
| 6290394 | |

| | |
|---|---|
| 3493061; 3684469 | |

16.     The above U.S. registrations for the BARBIE Trademarks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065. The registrations for the BARBIE Trademarks constitute *prima facie* evidence of their validity and of Mattel's exclusive right to use the BARBIE Trademarks pursuant to 15 U.S.C. § 1057(b).  Incontestable status under 15 U.S.C. § 1065 provides that the registrations for the BARBIE Trademarks are conclusive evidence of the validity of Mattel's BARBIE Trademarks and of the registrations of the BARBIE Trademarks, of Mattel's ownership of the BARBIE Trademarks, and of Mattel's exclusive right to use the BARBIE Trademarks in commerce. 15 U.S.C. §§ 1115(b), 1065. True and correct copies of the United States Registration Certificates for the above-listed BARBIE Trademarks are attached hereto as **Exhibit 1**.

17.     The BARBIE Trademarks are distinctive when applied to Barbie Products, signifying to the purchaser that the products come from Mattel and are manufactured to Mattel's quality standards. Mattel ensures that products bearing the BARBIE Trademarks are manufactured to the highest quality standards.

18.     The BARBIE Trademarks are famous marks as that term is used in 15 U.S.C. § 1125(c)(1). The innovative marketing and product designs of the Barbie Products have enabled the Barbie brand to achieve widespread recognition and fame. The widespread fame, outstanding reputation, and significant goodwill associated with the Barbie brand have made the BARBIE Trademarks valuable assets of Mattel.

9

19.     Mattel is among a limited number of companies that not only develop and produce global entertainment properties, characters, and content, but also monetize that content through the creation, sale, and licensing of products. Mattel has expended substantial time, money, and other resources in advertising and promoting the BARBIE Trademarks. In fact, Mattel has expended millions of dollars in advertising, promoting, and marketing featuring the BARBIE Trademarks. Barbie Products have also been the subject of extensive unsolicited publicity resulting from their high-quality, innovative designs. As a result, products bearing the BARBIE Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality products sourced from Mattel. Barbie Products have become among the most popular of their kind in the U.S. and the world. The BARBIE Trademarks have achieved tremendous fame and recognition which has only added to the distinctiveness of the marks. As such, the goodwill associated with the BARBIE Trademarks is of incalculable and inestimable value to Mattel.

20.     Barbie Products are distributed and sold to consumers through authorized retail channels throughout the United States, including through authorized retailers in Illinois.

21.     Mattel has also registered the Barbie silhouette design (the "Barbie Copyrighted Work") with the United States Copyright Office under the title "Barbie Silhouette Head" (U.S. Copyright Registration No. VA 1-884-053), issued by the Register of Copyrights on December 12, 2013. A true and correct copy of the U.S. federal copyright registration certificate for the above-referenced Barbie Copyrighted Work is attached hereto as **Exhibit 2**.

22.     Among the exclusive rights granted to Mattel under the U.S. Copyright Act are the exclusive rights to reproduce, prepare derivative works of, distribute copies of, and display the Barbie Copyrighted Work to the public.

23. Since its first publication, the Barbie Copyrighted Work has been used on the Barbie Products.

**The Defendants**

24. Defendants are individuals and business entities of unknown makeup who own and/or operate one or more of the e-commerce stores under at least the Seller Aliases identified on Schedule A and/or other seller aliases not yet known to Mattel. On information and belief, Defendants reside and/or operate in the People's Republic of China or other foreign jurisdictions, or redistribute products from the same or similar sources in those locations. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

25. On information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed in Schedule A attached hereto. Tactics used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for Mattel to discover Defendants' true identities and the exact interworking of their network. If Defendants provide additional credible information regarding their identities, Mattel will take appropriate steps to amend the Complaint.

## IV. DEFENDANTS' UNLAWFUL CONDUCT

26. The success of the Barbie brand has resulted in significant counterfeiting of the BARBIE Trademarks and copying of the Barbie Copyrighted Work. Consequently, Mattel has a worldwide anti-counterfeiting program and regularly investigates suspicious e-commerce stores identified in proactive Internet sweeps and reported by consumers. In recent years, Mattel has identified many fully interactive, e-commerce stores offering Unauthorized Products on online marketplace platforms such as PayPal, Amazon, eBay, Temu, and Walmart, including the e-commerce stores operating under the Seller Aliases. The Seller Aliases target consumers in this

Judicial District and throughout the United States. At last count, global trade in counterfeit and pirated goods was worth an estimated $467 billion per year — accounting for a staggering 2.3% of all imports, according to the Organization for Economic Cooperation and Development (the "OECD").[2] The primary source of all those counterfeits, the OECD and others say, is China.[3]

27.     Third party service providers like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms."[4] Counterfeiters hedge against the risk of being caught and having their websites taken down from an e-commerce platform by preemptively establishing multiple virtual store-fronts.[5] Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, counterfeiters can have many different profiles that can appear unrelated even though they are commonly owned and operated.[6] Further, "E-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters."[7]

28.     Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer

---

[2] Press Release, Organization for Economic Cooperation and Development, *Global trade in fake goods reached USD 467 billion, posing risks to consumer safety and compromising intellectual property* (May 7, 2025), https://www.oecd.org/en/about/news/press-releases/2025/05/global-trade-in-fake-goods-reached-USD-467-billion-posing-risks-to-consumer-safety-and-compromising-intellectual-property.html.

[3] *Id.; see also, Intellectual Property Rights Seizure Statistics, Fiscal Year 2024*, U.S. Customs and Border Protection.

[4] *See* Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 NW. J. INT'L L. & BUS. 157, 186 (2020); *see also* report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020), and finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and recommending that "[s]ignificantly enhanced vetting of third-party sellers" is necessary.

[5] "Combating Trafficking in Counterfeit and Pirated Goods," *supra* note 4, at 22.

[6] *Id.* at 39.

[7] Chow, *supra* note 4, at 186-87.

shipping to the United States, including Illinois, accept payment in U.S. dollars from U.S. consumers and, on information and belief, have sold Unauthorized Products to residents of Illinois. Screenshots evidencing Defendants' infringing activities are attached as **Exhibit 3**.

29. Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies. For example, Defendants facilitate sales by designing the e-commerce stores (including product detail pages) operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. E-commerce stores operating under the Seller Aliases appear sophisticated and accept payment in U.S. dollars from U.S. consumers. E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer. Mattel has not licensed or authorized Defendants to use any of the BARBIE Trademarks and/or copy or distribute the Barbie Copyrighted Work, and none of the Defendants are authorized retailers of Barbie Products.

30. Many Defendants also deceive unknowing consumers by using the BARBIE Trademarks without authorization within the content, text, and/or meta tags of their e-commerce stores to attract various search engines crawling the Internet looking for websites relevant to consumer searches for Barbie Products. Other e-commerce stores operating under the Seller Aliases omit using the BARBIE Trademarks in the item title to evade enforcement efforts while using strategic item titles and descriptions that will trigger their listings when consumers are searching for Barbie Products.

31. E-commerce store operators like Defendants commonly engage in fraudulent conduct when registering the Seller Aliases by providing false, misleading, and/or incomplete

information to e-commerce platforms to prevent discovery of their true identities and the scope of their e-commerce operation.

32. E-commerce store operators like Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Unauthorized Products. Such seller alias registration patterns are one of many common tactics used by e-commerce store operators like Defendants to conceal their identities and the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

33. Defendants are collectively causing harm to Mattel's goodwill and reputation because the effect of their unlawful actions taken together amplifies each harm and creates a single negative consumer impression. Defendants' activities, occurring at the same time and in the same retail space and manner as one another, blend together to create a single negative impression on consumers such that they constitute the same occurrence or series of occurrences. The combination of all Defendants engaging in the same illegal activity in the same time span causes a collective harm to Mattel in a way that individual actions, occurring alone, might not.

34. E-commerce store operators like Defendants are in constant communication with each other and regularly participate in QQ.com chat rooms and through websites such as sellerdefense.cn and kuajingvs.com regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

35. Counterfeiters such as Defendants typically operate under multiple seller aliases and payment accounts so that they can continue operation in spite of Mattel's enforcement. E-commerce store operators like Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts to off-shore accounts outside the jurisdiction of this Court to

avoid payment of any monetary judgment awarded to Mattel. Indeed, analysis of financial account transaction logs from previous similar cases indicates that off-shore counterfeiters regularly move funds from U.S.-based financial accounts to off-shore accounts outside the jurisdiction of this Court.

36.     Upon information and belief, Defendants are working to knowingly and willfully import, distribute, offer for sale, and sell Unauthorized Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Mattel, have knowingly and willfully used and continue to use the BARBIE Trademarks and/or copies of the Barbie Copyrighted Work in connection with the advertisement, distribution, offering for sale, and sale of Unauthorized Products into the United States and Illinois over the Internet.

37.     Defendants' unauthorized use of the BARBIE Trademarks and/or copies of the Barbie Copyrighted Work in connection with the advertising, distribution, offering for sale, and sale of Unauthorized Products, including the sale of Unauthorized Products into the United States, including Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Mattel.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

38.     Mattel hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

39.     This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the federally registered BARBIE Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The BARBIE Trademarks are highly distinctive marks. Consumers have come

15

to expect the highest quality from Barbie Products offered, sold, or marketed under the BARBIE Trademarks.

40. Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products using counterfeit reproductions of the BARBIE Trademarks without Mattel's permission.

41. Mattel is the exclusive owner of the BARBIE Trademarks. Mattel's United States Registrations for the BARBIE Trademarks (**Exhibit 1**) are in full force and effect. On information and belief, Defendants have knowledge of Mattel's rights in the BARBIE Trademarks and are willfully infringing and intentionally using counterfeit versions of the BARBIE Trademarks. Defendants' willful, intentional, and unauthorized use of the BARBIE Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Unauthorized Products among the general public.

42. Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

43. Mattel has no adequate remedy at law and, if Defendants' actions are not enjoined, Mattel will continue to suffer irreparable harm to its reputation and the goodwill of the BARBIE Trademarks.

44. The injuries and damages sustained by Mattel have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Unauthorized Products.

## COUNT II
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

45. Mattel hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

16

46. Defendants' promotion, marketing, offering for sale, and sale of Unauthorized Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Mattel or the origin, sponsorship, or approval of Defendants' Unauthorized Products by Mattel.

47. By using the BARBIE Trademarks in connection with the Unauthorized Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Unauthorized Products.

48. Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Unauthorized Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

49. Mattel has no adequate remedy at law and, if Defendants' actions are not enjoined, Mattel will continue to suffer irreparable harm to its reputation and the goodwill of the Barbie brand.

### COUNT III
### COPYRIGHT INFRINGEMENT OF UNITED STATES COPYRIGHT REGISTRATION
### (17 U.S.C. §§ 106 AND 501)

50. Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

51. The Barbie Copyrighted Work constitutes an original work and copyrightable subject matter pursuant to the Copyright Act, 17 U.S.C. §§ 101, *et seq*.

52. Plaintiff is the owner of the Barbie Copyrighted Work. Mattel has complied with the registration requirements of 17 U.S.C. § 411(a) for the Barbie Copyrighted Work. The Barbie Copyrighted Work is protected by Copyright Registration No. VA 1-884-053 which was duly issued to Mattel by the United States Copyright Office. At all relevant times, Mattel has been and

still is the owner of all rights, title, and interest in the Barbie Copyrighted Work, which has never been assigned, licensed, or otherwise transferred to Defendants.

53. The Barbie Copyrighted Work is published on the Internet and available to Defendants online. As such, Defendants had access to the Barbie Copyrighted Work via the Internet.

54. Without authorization from Barbie, or any right under the law, Defendants have deliberately copied, displayed, distributed, reproduced, and/or made derivate works incorporating the Barbie Copyrighted Work on e-commerce stores operating under the Seller Aliases and the corresponding Unauthorized Products. Defendants' derivative works are virtually identical to and/or are substantially similar to the look and feel of the Barbie Copyrighted Work. Such conduct infringes and continues to infringe the Barbie Copyrighted Work in violation of 17 U.S.C. § 501(a) and 17 U.S.C. §§ 106(1)–(3), (5).

55. Defendants reap the benefits of the unauthorized copying and distribution of the Barbie Copyrighted Work in the form of revenue and other profits that are driven by the sale of Unauthorized Products.

56. Defendants have unlawfully appropriated Mattel's protectable expression by taking material of substance and value and creating Unauthorized Products that capture the total concept and feel of the Barbie Copyrighted Work.

57. On information and belief, the Defendants' infringement has been willful, intentional, purposeful, and in disregard of and with indifference to Plaintiff's rights.

58. The Defendants, by their actions, have damaged Plaintiff in an amount to be determined at trial.

59. Defendants' conduct is causing and, unless enjoined and restrained by this Court, will continue to cause Plaintiff great and irreparable injury that cannot fully be compensated or measured in money. Plaintiff has no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Plaintiff is entitled to a preliminary and permanent injunction prohibiting further infringement of the Barbie Copyrighted Work.

## PRAYER FOR RELIEF

WHEREFORE, Mattel prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

   a. using the BARBIE Trademarks or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine Barbie Product or is not authorized by Mattel to be sold in connection with the BARBIE Trademarks;

   b. reproducing, distributing copies of, making derivative works of, or publicly displaying the Barbie Copyrighted Work in any manner without the express authorization of Plaintiff;

   c. passing off, inducing, or enabling others to sell or pass off any product as a genuine Barbie Product or any other product produced by Mattel, that is not Mattel's or not produced under the authorization, control, or supervision of Mattel and approved by Mattel for sale under the BARBIE Trademarks and/or the Barbie Copyrighted Work;

d.  committing any acts calculated to cause consumers to believe that Defendants' Unauthorized Products are those sold under the authorization, control, or supervision of Mattel, or are sponsored by, approved by, or otherwise connected with Mattel;

e.  further infringing the BARBIE Trademarks and/or the Barbie Copyrighted Work and damaging Mattel's goodwill; and

f.  manufacturing, shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Mattel, nor authorized by Mattel to be sold or offered for sale, and which bear any of Mattel's trademarks, including the BARBIE Trademarks, or any reproductions, counterfeit copies, or colorable imitations thereof and/or which bear the Barbie Copyrighted Work;

2)  Entry of an Order that, upon Mattel's request, those with notice of the injunction, including, without limitation, any online marketplace platforms such as PayPal, Amazon, eBay, Temu, and Walmart (collectively, the "Third Party Providers") shall disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using the BARBIE Trademarks and/or which bear the Barbie Copyrighted Work;

3)  That Defendants account for and pay to Mattel all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the BARBIE Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

4) In the alternative, that Mattel be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the BARBIE Trademarks;

5) As a direct and proximate result of Defendants' infringement of the Barbie Copyrighted Work, Plaintiff is entitled to damages as well as Defendants' profits, pursuant to 17 U.S.C. § 504(b);

6) Alternatively, and at Plaintiff's election prior to any final judgment being entered, Plaintiff is entitled to the maximum amount of statutory damages provided by law, $150,000 per work infringed pursuant to 17 U.S.C. § 504(c), or for any other such amount as may be proper pursuant to 17 U.S.C. § 504(c)

7) Plaintiff is further entitled to recover its attorneys' fees and full costs for bringing this action pursuant to 17 U.S.C. § 505 and 15 U.S.C. § 1117(a); and

8) Award any and all other relief that this Court deems just and proper.

Dated this 11th day of March 2026.

Respectfully submitted,

/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
Rachel S. Miller
Hannah A. Abes
Greer, Burns & Crain, Ltd.
200 W. Madison Street, Suite 2100
Chicago, Illinois 60606
312.360.0080 / 312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
rmiller@gbc.law
habes@gbc.law

*Counsel for Plaintiff Mattel, Inc.*

21